Steven W. Ritcheson (SBN 174062)
**INSIGHT, PLC**
578 Washington Blvd. #503
Marina del Rey, California 90292
Telephone: (424) 289-9191
Facsimile: (818) 337-0383
*switcheson@insightplc.com*

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

SOFTWAVE TISSUE REGENERATION TECHNOLOGIES, LLC, an Ohio limited liability company,

Plaintiff,

vs.

MOON POOL, LLC, d/b/a LAUNCH MEDICAL, a California limited liability company, THE WOLFF CLINIC d/b/a THE NOVUS ANTI-AGING CENTER, a California corporation,

Defendants.

**Case No. 2:25-cv-08484-MCS-MAA**

**PLAINTIFF'S AMENDED COMPLAINT FOR BREACH OF CONTRACT, OR IN THE ALTERNATIVE, PATENT INFRINGEMENT AGAINST DEFENDANTS**

**JURY TRIAL DEMANDED**

Plaintiff SoftWave Tissue Regeneration Technologies, LLC (the "Plaintiff" or "SoftWave TRT") files this Amended Complaint against Defendants Moon Pool, LLC, d/b/a Launch Medical (hereinafter, "Defendant" or "Launch Medical") and The Wolff Clinic, d/b/a The Novus Anti-Aging Center (hereinafter, "Defendant" or "The Novus Center") (collectively, referred to as the "Parties"), and in support hereof shows unto the Court the following:

## PARTIES

1. Plaintiff SoftWave Tissue Regeneration Technologies, LLC ("SoftWave TRT") is an Ohio limited liability company with its principal place of business located at 195 Chastain Meadows Ct, Suite 109, Kennesaw, GA 30144.

2. Defendant Moon Pool, LLC, d/b/a Launch Medical, is a California limited liability company with its principal place of business located at 9601 Cozycroft Ave., Unit 1, Chatsworth, CA 91311 and may be served with Summons and a copy of this Amended Complaint by delivering the same to its registered agent, 1505 Corporation Telos Legal Corp., 510 W 6th St, Suite 320, Los Angeles, CA 90014.

3. Defendant The Wolff Clinic, d/b/a The Novus Anti-Aging Center, is a California corporation with its principal place of business located at 11650 Riverside Dr., Suite 11, Studio City, CA and may be served with Summons and a copy of this Amended Complaint by delivering the same to its registered agent, 1505 Corporation Capital Corporate Services, Inc.

## JURISDICTION AND VENUE

4. This action arises under the Patent Act, 35 U.S.C. § 101 *et seq*., including 35 U.S.C. §§ 271, 281, 283, 284, and 285, and the Lanham Act 15 U.S.C. §§ 1051 *et seq*. Accordingly, this Court has federal question jurisdiction pursuant to 15 U.S.C. § 1121 and 35 U.S.C § 281. This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338.

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b).

6. This Court has personal jurisdiction over each Defendant because: Defendant has minimum contacts within the State of California and in the Central District of California; each Defendant has purposefully availed itself of the privileges of conducting business in the State of California and in the Central District of California; each Defendant has sought protection and benefit from the laws of the State of California; each Defendant regularly and continuously conducts business in this District and have infringed and/or induced infringement, and continue to do so, in this District and Plaintiff's causes of action arise directly from each Defendant's business contacts and other activities in the State of California and in the Central District of California. In addition, this Court has personal jurisdiction over each Defendant because minimum contacts have been established with the forum and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

7. More specifically, each Defendant, directly and/or through its intermediaries, ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises its products and affiliated services in the United States, the State of California, and the Central District of California. Moreover, each Defendant's website advertises products and services in this District and offers to sale and sells the infringing product, "The Phoenix" (formerly known as "the Rocket") and instructs its customers how to use the device in an infringing manner.[1] *See*, https://getmyphoenix.com and https://thenovuscenter.com/. Each Defendant has committed patent infringement in the State of California and in the Central District of California. Each Defendant solicits customers in the State of California and in this District. Each Defendant has customers who are residents of the State of California and this District and who use each Defendant's product(s) in the State of California and in this District.

## PRIOR LITIGATION BETWEEN SOFTWAVE TRT AND LAUNCH MEDICAL

[1] The "Phoenix" will be used to refer to both the Phoenix and Rocket devices, which are understood to be the same or similar products.

8. SoftWave TRT and Launch Medical were previously before this Court in the matter of *AlexSam, Inc. v. Moon Pool, LLC, d/b/a Launch Medical,* Case No. 2:24-v-02989-MCS-MAA (hereinafter, the "Original Litigation"), which was dismissed as a result of the settlement agreement between the parties.

9. Launch Medical failed to perform under the terms of the Parties' settlement agreement, and therefore, Plaintiff has no choice but to re-file this matter seeking to enforce the Parties' settlement agreement, or in the alternative, seeking damages as a result of Launch Medical's willful patent infringement, which was originally alleged in the Original Litigation.

10. Plaintiff gave notice to Launch Medical of its breach of the terms of the Parties' settlement agreement and an opportunity to cure; however, Launch Medical failed to cure for a period of more than thirty (30) days after the notice of breach was given by Plaintiff.

## <u>THE ACCUSED PRODUCT</u>

11. This case involves claims of patent infringement under the Patent Act, 35 U.S.C. § 101 *et seq.* based on each Defendant's making, use, offering for sale and sales






of its device known as "The Phoenix," which was formerly known as "The Rocket" (collectively, "the "Accused Product") that uses Extracorporeal Shock Wave Technology ("ESWT"), Low-Intensity ESWT ("Li-ESWT"), or Acoustic Wave Therapy (AWT), for various medical indications, specifically Erectile Dysfunction ("ED") and Peyronie's Disease ("PD").

12. The Phoenix is a product that is made, used, sold, offered for sale, and imported in the United States by the Defendants and possibly others.




*See* getmyphoenix.com/phoenix.

13. All of the allegations herein, with the exception of those related to the Original Litigation, apply to each Defendant because The Novus Center has "an exclusive agreement with Launch Medical to sell the Phoenix…."

> **Is this website owned by The Phoenix or The Novus Center?**
> This website is exclusively owned by The Novus Center.
>
> **Why is The Novus Center selling The Phoenix?**
> Here at The Novus Center we want all of our patients to get results, so we have an exclusive agreement with Launch Medical to sell The Phoenix at no additional cost to you.

*See* https://www.orderthephoenix.com/phoenix61743394.

14. The Novus Center provides information on the Phoenix:



*See* https://thenovuscenter.com/treatments/sexual-performance/the-phoenix.

15. Launch Medical provides a kit to its customers that contains the following:




*See* https://www.getmyphoenix.com/phoenix.

16. The Novus Center also offers a kit to its customers:




*See* https://www.orderthephoenix.com/phoenix61743394.

17. According to Launch Medical, the Phoenix device is utilized to provide a method of stimulation of a genital tissue or reproductive organ of an infertility or impotence diagnosed patient.

18. According to Launch Medical, the Phoenix device emits very fast pressure pulses called acoustic shock waves. *See* https://getmyphoenix.com/how-it-works/. Launch Medical describes the operation of its device as follows:

> **The Phoenix vs Clinical Shockwave Therapy**
>
> The Phoenix produces powerful, targeted sound waves. This is the same energy signature as that produced by clinical soundwave therapy (Li-ESWT) used in doctor's offices. The waves generated by The Phoenix are much more gentle, but they produce an incredible physiological response in the body.. Better yet, you can use The Phoenix in the comfort and privacy of your home, at a fraction of the cost.

> **How does The Phoenix work?**
>
> Li-ESWT isn't new, but the way men access it has changed. Thanks to The Phoenix, this life-changing therapy has never been more affordable or convenient. Before The Phoenix, Li-ESWT was only available in clinics. Now you can get the same results at home, for a fraction of the cost. The Phoenix is the only clinical grade home Li-ESWT device in the world, saving men over $34,000 on average after 70 sessions.

*Id.*

19. Launch Medical references "online instruction videos and an easy-to-read instruction manual" to show customers how to perform treatments using the Phoenix and also provides a brief summary on its website:

> **Performing Treatments**
>
> Simply run the tip along five lines of travel, moving at the speed indicated by the blue pacing lights on the device. The patented guidance system ensures proper technique every time, showing you where to place the tip and for how long. We walk you through the easy process with online instructional videos and an easy-to-read instruction manual.

*See* https://getmyphoenix.com/phoenix.

20. The Novus Center explains how the Phoenix works:

> **What is The Phoenix**
>
> The Phoenix is a patented, FDA registered medical device designed by medical professionals. It is the only device that gives men safe, effective access to clinical strength Acoustic Wave Therapy from the comfort of home - no prescriptions, no negative side effects, no hassle.
>
> **Why do doctors recommend The Phoenix?**
>
> Acoustic Wave Therapy has helped men improve the performance of their penis for more than 20 years. It's painless, non-invasive and 93% of men who completed the treatment protocol using The Phoenix reported significant improvement.
>
> **Will it work for me?**
>
> If you struggle with ED or Peyronie's Disease, Acoustic Wave Therapy can fix the leading cause, but it also helps healthy men perform better in bed. Some men report overnight improvement, but most will require multiple treatments for maximum results. Just like working out, consistency over time is key.

*See* https://www.orderthephoenix.com/phoenix61743394.

21. Launch Medical explains generally how the Phoenix works:

> **How The Phoenix works**
>
> - The Phoenix uses powerful soundwaves that work with the body to support healthy sexual function in men. This is the same energy signature as machines used in doctors' offices.
> - At-home treatments only take 17 minutes twice per week for 30 days, then a 30-day treatment-free period, followed by another 30 days of twice-per-week treatments, and 30 days of rest.
> - 'The doctor-designed protocol is safe and effective with most men noticing improvement within 60 to 90 days, with continued improvement over time. Men who follow this protocol achieve spectacular results with their sex life.

*Id.*

22. Launch Medical claims that it uses a "patented guidance system" and a "patented shockwave therapy or Li-ESWT," although no patent number is provided on its website. Similarly, the Novus Center states that "[t]he Phoenix is a patented, FDA registered medical device" using Acoustic Wave Therapy. *See* https://www.orderthephoenix.com/phoenix61743394.

**<u>HISTORY OF SOFTWAVE TRT</u>**

23. SoftWave TRT is a medical technology company that develops, manufacturers, and sells ESWT devices used to treat a variety of medical conditions under the name SoftWave™ Acoustic Wave Therapy.

24. Founded in 2004, the predecessor in interest to SoftWave TRT is a "medical technology company that is developing advanced solutions specializing in shock wave therapy for better patient healing." *See* SoftWave TRT's website, available at www.softwavetrt.com/about-softwave.

25. SoftWave TRT is currently engaged in business throughout the United States. SoftWave TRT also has a strong international presence through its German affiliate, MTS Europe GmbH.

26. SoftWave TRT develops and manufactures its "SoftWave" devices through its German affiliate, MTS. The technology utilized in the devices can be categorized into two groups: (a) patented, unfocused "SoftWaves" for soft tissue

indications (*e.g.*, wounds) and (b) focused shockwaves for lithotripsy and bony indications (*e.g.*, non-healing fractures).

27. The patented SoftWave technology uses various lens configurations to produce pressure waves. These waves have a characteristic pressure profile of short rise-times reaching high amplitudes (comparable to a sonic boom). The pressure waves can be shaped through a reflector, which enables the transmission of either highly focused shockwaves for use on urinary stones or non-union fractures, or soft-focused or unfocused pressure waves (*i.e.*, SoftWave) for most soft tissue indications.

28. SoftWave TRT's patented technology is distinguished from competitors' shockwave technology in that SoftWave TRT uses a patented parabolic (as opposed to an ellipsoid) reflector in the therapy head. This allows delivery of unfocused waves of acoustic energy over a broad target area.

29. The fact that SoftWave TRT's technology generates less pain, has a higher efficacy rate, and has a lower re-treatment rate further distinguishes it from its competitors' higher-energy, more focused shockwave systems.

30. As the industry leader, SoftWave TRT's discovery that its shockwaves have the same or better clinical benefit as higher-energy focused shockwaves for most medical conditions has allowed it to further develop the idea into a useful format and secure patents protecting its inventions.

31. SoftWave TRT's technology provides a number of advantageous benefits, including, but not limited to: (a) painless treatments not requiring the use of localized anesthesia; (b) the ability to treat larger surfaces, such as wounds, faster and more efficiently than competing shockwave devices; and (c) small, compact devices that are less expensive to manufacture than competing devices.

32. SoftWave TRT currently has approval to distribute two devices in the United States: the LithoGold and VetGold systems.

33. SoftWave TRT was the first company to discover (and patent the inventions used to generate) the biologic response generated by unfocused SoftWave

technology, including: (a) promotion of growth factors (e.g., VEGF, BPM, and OP); (b) promotion of nitric oxide; (c) improved vascularity; and (d) migration and differentiation of stem cells.

34. SoftWave TRT's extensive patent portfolio includes but is not limited to: (a) dozens of United States Patents; (b) published United States patent applications; (c) international patent applications; and (d) international patents. Additionally, as of July 19, 2022, SoftWave TRT was granted four (4) new patents: U.S. Patent Nos. 11,389,373; 11,389,370; 11,389,371; and 11,389,372. *See* https://softwavetrt.com/4-u-s-patents-issued-on-july-19-2022/. Specifically, SoftWave TRT's patent portfolio consists of at least the following:

| Patent/Pub. No. | Date | Title |
|---|---|---|
| U.S. 7,470,240 | Dec. 30, 2008 | Pressure pulse/shock wave therapy methods and an apparatus for conducting the therapeutic methods |
| U.S. 7,841,995 | Nov. 30, 2010 | Pressure pulse/shock wave therapy methods and an apparatus for conducting the therapeutic methods |
| U.S. 7,905,845 | March 15, 2011 | Pressure pulse/shock wave therapy methods and an apparatus for conducting the therapeutic methods |
| U.S. 7,883,482 | Feb. 8, 2011 | Pressure pulse/shock wave therapy methods and an apparatus for conducting the therapeutic methods |
| U.S. 7,507,213 | March 24, 2009 | Pressure pulse/shock wave therapy methods for organs |
| U.S. 7,537,572 | May 26, 2009 | Treatment or pre-treatment for radiation/chemical exposure |
| U.S. 7,601,127 | Oct. 13, 2009 | Therapeutic stimulation of genital tissue or reproductive organ of an infertility or impotence diagnosed patient |
| U.S. 7,497,834 | March 3, 2009 | Germicidal method for eradicating or preventing the formation of biofilms |
| U.S. 7,497,835 | March 3, 2009 | Method of treatment for and prevention of periodontal disease |
| U.S. 7,544,171 | June 9, 2009 | Methods for promoting nerve regeneration and neuronal growth and elongation |
| U.S. 7,600,343 | Oct. 13, 2009 | Method of stimulating plant growth |
| U.S. 7,578,796 | Aug. 25, 2009 | Method of shockwave treating fish and shellfish |
| U.S. 7,497,836 | March 3, 2009 | Germicidal method for treating or preventing sinusitis |
| U.S. 8,162,859 | April 24, 2012 | Shock Wave Treatment Device and Method of Use |

| Patent/Pub. No. | Date | Title |
|---|---|---|
| U.S. 7,594,930 | Sept. 29, 2009 | Method of attaching soft tissue to bone |
| U.S. 7,988,648 | Aug. 2, 2011 | Pancreas Regeneration Treatment For Diabetics Using Extracorporeal Acoustic Shock Waves |
| U.S. 8,257,282 | Sept. 4, 2012 | Pressure Pulse/Shock Wave Apparatus for Generating Waves Having Plane, Nearly Plane, Convergent Off Target or Divergent Characteristics |
| U.S. 8,535,249 | Sept. 17, 2013 | Pressure Pulse/Shock Wave Apparatus for Generating Waves Having Plane, Nearly Plane, Convergent Off Target or Divergent Characteristics |
| U.S. 7,390,308 | June 24, 2008 | Apparatus and process for optimized electro-hydraulic pressure pulse generation |
| U.S. 6,217,531 | April 17, 2001 | Adjustable electrode and related method |
| U.S. 7,695,443 | April 13, 2010 | Device for generating shock waves |
| U.S. 7,775,995 | Aug. 17, 2010 | The Use of a Thyristor for Electric Switching During the Generation of Shock Waves |
| U.S. Pub. 2007/0239082 | Oct. 11, 2007 | Shock Wave Treatment Device |
| U.S. Pub. 2008/0191596 | Aug. 14, 2008 | An Improved Device For Producing Electrical Discharges in an Aqueous Medium |
| U.S. Pub. 2008/0269651 | Oct. 30, 2008 | Wound Care Bandaging In Combination With Acoustic Shock Wave Applications |
| U.S. Pub. 2009/0041864 | Feb. 12, 2009 | Apparatus and Method for Cellular Extract Enhancement |
| U.S. Pub. 2009/0088670 | April 2, 2009 | Shock Wave Coupling Adapter and Method of Use |
| U.S. Pub. 2009/0093739 | April 9, 2009 | Apparatus for Generating Electrical Discharge |
| U.S. Pub. 2011/0177576 | June 21, 2011 | Shock Wave Cell Treatment Device And Method To Enhance Cell Replication |
| U.S. Pub. 2008/0183111 | June 30, 2008 | Device And Method For Generating Shock Waves |
| EP1981463 | | Shock Wave Treatment Device And Method Of Use |
| EP1981412 | | Improved Shock Wave Treatment Device |
| WO 2007/098300 | Aug. 30, 2007 | Shock Wave Treatment Device And Method Of Use |
| WO 2007/087470 | Aug. 2, 2007 | Improved Shock Wave Treatment Device |

## THE PATENTS-IN-SUIT

35. SoftWave TRT is the assignee of United States Patent Nos. 7,601,127, entitled *Therapeutic Stimulation Of Genital Tissue Or Reproductive Organ Of An*

*Infertility Or Impotence Diagnosed Patient*, 8,535,249, entitled *Pressure Pulse/Shockwave Apparatus For Generating Waves Having Plane, Nearly Plane, Convergent Off Target Or Divergent Characteristics*, and 7,841,995 entitled *Pressure Pulse/Shock Wave Therapy Methods And An Apparatus For Conducting The Therapeutic Methods* (collectively, the "Patents-in-Suit") and possesses all right, title, and interest in the Patents-in-Suit, including the right to enforce the Patents-in-Suit, the right to license the Patents-in-Suit, and the right to sue Defendant for infringement and recover past damages, as described below. The Patents-in-Suit were duly and legally issued by the United States Patent and Trademark Office after full and fair examination.

36. SoftWave TRT currently has product lines developed for the treatment of five distinct areas of care: (a) CardioGold™ – cardiac and vascular indications; (b) LithoGold™ – lithotripsy and urology indications; (c) OrthoGold™ – orthopedic indications; (d) UroGold™ – urology indications; (e) VetGold™ – veterinary indications; and (f) DermaGold™ – wound care indications.

37. Currently, SoftWave TRT's three primary initiatives consist of: (a) selling approved devices throughout North America; (b) securing legal protection for its products and intellectual property; and (c) obtaining regulatory approval or clearance in the United States.

**COUNT I**
**Breach of Contract Against Defendant Launch Medical**

38. Plaintiff re-alleges and incorporates by express reference the preceding Paragraphs as if fully restated and set forth herein.

39. SoftWave TRT and Launch Medical reached agreement to settlement terms of the Original Litigation and reported such results to this Court in that matter.

40. Counsel for Launch Medical had represented to counsel for Plaintiff that Launch Medical agreed to such terms.

41. Apparently, in light of the settlement, this Court dismissed the Original Litigation.

42. Shortly thereafter, Launch Medical attempted to insert new material terms into the agreement and Plaintiff rejected these changes. Ultimately, Launch Medical never signed the agreement and failed to perform its obligations under the settlement terms.

43. Plaintiff filed a motion to reopen and/or enforce the terms of the settlement agreement, which was denied by this Court, and Plaintiff was ordered to file a new case in order to pursue its breach of contract claim and/or to renew its patent infringement claims against Launch Medical.

44. Plaintiff files this complaint seeking damages for breach of the Parties' agreement, or in the alternative, for patent infringement of the Patents-in-Suit as alleged in the Original Litigation.

**COUNT II**
**Patent Infringement (U.S. Patent No. 7,601,127) Against Defendant The Novus Center, and In The Alternative, Patent Infringement (U.S. Patent No. 7,601,127) Against Defendant Launch Medical**

45. Plaintiff re-alleges and incorporates by express reference the preceding Paragraphs as if fully restated and set forth herein.

46. Although SoftWave TRT and Launch Medical had reached agreement on material terms to settle the Original Litigation, Launch Medical has not performed its obligations per that agreement, and therefore, Plaintiff is seeking to enforce the terms of the agreement as asserted in Count I, or in the alternative, to re-assert its claims of patent infringement as alleged in Counts II, III and IV herein.

47. United States Patent No. 7,601,127 (hereinafter, the "'127 Patent") was duly and legally issued by the USPTO on October 13, 2009, to its inventors, Reiner Schultheiss, Wolfgang Schaden, and John Warlick, and was initially assigned to

General Patent, LLC. Attached hereto as **Exhibit A** is a true and correct copy of the ‘127 Patent and is incorporated herein by express reference.

48. As of September 30, 2020, in an Assignment of Patent Rights, SoftWave TRT is the owner of all rights, title and interest in the ‘127 Patent, among other patents. The Assignment also allows SoftWave TRT to collect past damages prior to that date.

49. Each Defendant has infringed and continues to infringe the ’127 Patent either literally or under the doctrine of equivalents through the use of the claimed methods and/ or for inducing and/or contributing to the infringement by its customers. More specifically, each Defendant has infringed and continues to infringe one or more claims of the ’127 Patent, including at least Claims 1, 3, and 7 (the “’127 Patent Claims”) because it utilizes the claimed methods using the Accused Product and/or ships, distributes, makes, uses, imports, offers for sale, sells, and/or advertises the Accused Product so as to induce and/or contribute to its customers into utilizing or use of Plaintiff’s claimed methods. Specifically, each Defendant has infringed the ’127 Patent by utilizing the methods claimed and disclosed in the ’127 Patent Claims.

50. Upon information and belief, the Phoenix device comprises an acoustic



shock wave generator that is used to administer shock waves in the manner claimed in the ‘127 Patent including, for example, the administration of shock waves with a power density in the range of 0.01 $mJ/mm^2$ up to 1.0 $mJ/mm^2$ to stimulate tissue in the genital tissue of male patients and avoid causing tissue damage.

51. Upon information and belief, the pressure pulse emitted by the Phoenix device comprises an acoustic pulse which necessarily includes several cycles of positive and negative pressure with an amplitude of above 0.1 MPa for less than one second in the manner described in at least Claim 1 of the ‘127 Patent. Operation within such parameters is required to provide the benefits of the advertised treatment while avoiding damage to the genital tissue.

52. The Phoenix device is directed to the genital tissue or reproductive organ.

53. On information and belief, the emitted shock waves or pressure pulses and away from any localized geometric focal volume or point of the emitted shock waves wherein the emitted shock waves or pressure pulses either have no geometric focal volume or point or have a focal volume or point ahead of the genital tissue or reproductive organ or beyond the genital tissue or reproductive organ thereby passing the emitted waves through the genital tissue or reproductive organ while avoiding having any localized focal point within the genital tissue or reproductive organ wherein the emitted pressure pulses or shock waves are convergent, divergent, planar or near planar and the pressure pulse shock wave generator or source is based on electro-hydraulic, electromagnetic, piezoceramic or ballistic wave generation having an energy density value ranging as low as 0.00001 mJ/mm2 to a high end of below 1.0 mJ/mm2. Such information and belief is based, in part, on the use of the device and the desire to avoid harm and to provide the advertised results. Moreover, the Accused Product are sold with lubricant and/or numbing cream for use at least prior to and during treatment. Thus, when used as directed, the Accused Product practice at least Claims 1, 3, and 7 of the ‘127 Patent.

54. The preamble of Claim 1 of the ‘127 Patent states that “The method of

stimulation of a genital tissue or reproductive organ of an infertility or impotence diagnosed patient comprising the steps of." Ex. A at Claim 1.

55. Launch Medical's Phoenix device is utilized to provide a method of stimulation of a genital tissue or reproductive organ of an infertility or impotence diagnosed patient. For example, the Phoenix device is advertised as:

> Introducing The Rocket, a revolutionary device from Launch Medical that uses soundwave therapy to permanently reverse symptoms of ED. It utilizes the same technology employed by ED clinics worldwide but has made the enhancement of sexual performance far more affordable, with a retail price of $749—while eliminating the stress, embarrassment and anxiety of conventional medical office visits.

*See "The Rocket, first home treatment for erectile dysfunction" at* https://patch.com/california/studiocity/Rocket-first-home-treatment-erectile-dysfunction.

56. Claim 1(a) discloses

> activating an acoustic shock wave generator or source to emit pressure pulses including but not limited to very fast pressure pulses called acoustic shock waves directed toward the genital tissue or reproductive organ to impinge the genital tissue or reproductive organ with pressure pulses or shock waves having a low energy density in the range of 0.000001 $mJ/mm^2$ to 1.0 $mJ/mm^2$; the pressure pulse being an acoustic pulse which includes several cycles of positive and negative pressure, wherein the pressure pulse has an amplitude of the positive part of such a cycle above 0.1 MPa and the time duration of the pressure pulse cycle is from a micro-second to about a second, rise times to the peak pressure of the positive part of the first pressure cycle being in the range of nanoseconds (ns) up to milliseconds (ms), the

> acoustic shock waves being very fast pressure pulses having amplitudes of the positive part of the cycle similarly above 0.1 MPa but with rise times to a peak positive pressure of the positive part of the amplitude being below 100 ns, the duration of the shock wave is below 3 micro-seconds (µs) for the positive part of a cycle and above 3 micro-seconds for the negative part of a cycle;

*See* Ex. A at Claim 1.

57. Use of the Phoenix includes the use of a device that is activated to generate an acoustic shock wave to emit pressure pulses.

58. The Phoenix device emits acoustic shock waves.

59. These shock waves are directed to genital tissue to impinge the genital tissue.




**How does Li-ESWT work?**

The Phoenix's internal collisions produce powerful sound waves that penetrate deep into the treated area, causing a favorable physiological response. Because powerful sound waves are required to be effective, The Phoenix is quite loud. Although powerful, our device is safe, as it locks in-between treatments to ensure men don't over-treat themselves. No prescription is needed at this time.

https://www.getmyphoenix.com/technology/.

60. Upon information and belief, the Phoenix device is used to administer shock waves with a power density in the range of 0.01 $mJ/mm^2$ up to 1.0 $mJ/mm^2$ to stimulate tissue in male patients and avoid causing tissue damage.

61. On information and belief, the pressure pulse emitted by the Phoenix device comprises an acoustic pulse which includes several cycles of positive and negative pressure.

62. On information and belief, in order to avoid tissue damage and/or

cavitation, the pressure pulse from the Phoenix device has an amplitude of the positive part of such a cycle above 0.1 MPa and the time duration of the pressure pulse cycle is from a micro- second to about a second, rise times to the peak pressure of the positive part of the first pressure cycle being in the range of nanoseconds (ns) up to milliseconds (ms), the acoustic shock waves being very fast pressure pulses having amplitudes of the positive part of the cycle similarly above 0.1 MPa but with rise times to a peak positive pressure of the positive part of the amplitude being below 100 ns, the duration of the shock wave is below 3 micro-seconds (μs) for the positive part of a cycle and above 3 micro-seconds for the negative part of a cycle.

63. Launch Medical refers customers and prospective customers to "[m]ore than 40 clinical studies have clearly shown the efficacy of Acoustic Wave Therapy for men dealing with mild to severe ED. It fixes the root of the problem, instead of temporarily masking symptoms with expensive pills or painful injections." https://getmyphoenix.com/how-it-works/.

64. Claim 1(b) of the '127 Patent discloses

> subjecting the genital tissue, reproductive organ or the entire reproductive region of the body to the convergent, divergent, planar or near planar acoustic shock waves or pressure pulses in the absence of a focal point impinging the genital tissue or reproductive organ stimulating a cellular response in the absence of creating cavitation bubbles evidenced by not experiencing the sensation of cellular hemorrhaging caused by the emitted waves or pulses in the genital tissue or reproductive organ wherein the genital tissue or reproductive organ is positioned within a path of the emitted shock waves or pressure pulses and away from any localized geometric focal volume or point of the emitted shock waves wherein the emitted shock waves or pressure pulses either have no geometric focal volume or point or have a focal volume or point ahead of the genital tissue or reproductive organ or beyond the genital tissue or reproductive organ thereby passing the emitted waves through the genital tissue or

> reproductive organ while avoiding having any localized focal point within the genital tissue or reproductive organ wherein the emitted pressure pulses or shock waves are convergent, divergent, planar or near planar and the pressure pulse shock wave generator or source is based on electro-hydraulic, electromagnetic, piezoceramic or ballistic wave generation having an energy density value ranging as low as 0.00001 mJ/mm2 to a high end of below 1.0 mJ/mm2 ; and

*See* Ex. A at Claim 1.

65. The shock waves emitted by the Phoenix device are directed to the genital tissue, reproductive organ or the entire reproductive region of the body.

**The Phoenix**

**What does The Phoenix do?**

The Phoenix is an Acoustic Wave Therapy device that was specifically designed for safe and effective use at home. Acoustic Wave Therapy works by sending powerful sound waves into the targeted tissue, causing micro-trauma to the blood vessels beneath the skin, fostering angiogenesis, the growth of new blood vessels.

Launch Medical explains that:

*See* https://getmyphoenix.com/faq/.

66. On information and belief, the Phoenix device emits unfocused and form convergent, divergent, planar or near planar acoustic shock waves or pressure pulse.

67. Claim 1(c) discloses "stimulating said tissue, organ or body wherein the tissue, organ or body is positioned within a path of the emitted shock waves removed from any focal point of the emitted acoustic shock wave."

68. On information and belief, the Phoenix device uses AWT such that the genital tissue is positioned within a path of the emitted shock waves removed from any focal point of the emitted acoustic shock wave:

**It uses sound waves.**

Acoustic Wave Therapy uses sound waves to target the treatment area. No pills or needles. Just the clinically proven power of high-frequency, low-intensity sound.

**Breaks apart plaque.**

With targeted treatments, AWT breaks apart the old, hardened flow constricting build-up that prevents much-needed blood flow.

**Stimulates new, healthy blood vessels.**

In addition to removing plaque in existing blood vessels, acoustic waves traveling through your tissue stimulate angiogenesis: the body's natural healing process. New, healthy blood vessels will form in the treatment area to further improve blood flow.

https://getmyphoenix.com/how-it-works/.

69. The Novus Center explains how the Phoenix works:

**What is The Phoenix**

The Phoenix is a patented, FDA registered medical device designed by medical professionals. It is the only device that gives men safe, effective access to clinical strength Acoustic Wave Therapy from the comfort of home - no prescriptions, no negative side effects, no hassle.

**Why do doctors recommend The Phoenix?**

Acoustic Wave Therapy has helped men improve the performance of their penis for more than 20 years. It's painless, non-invasive and 93% of men who completed the treatment protocol using The Phoenix reported significant improvement.

**Will it work for me?**

If you struggle with ED or Peyronie's Disease, Acoustic Wave Therapy can fix the leading cause, but it also helps healthy men perform better in bed. Some men report overnight improvement, but most will require multiple treatments for maximum results. Just like working out, consistency over time is key.

*See* https://www.orderthephoenix.com/phoenix61743394.

70. On information and belief, the Phoenix emits shock waves or pressure pulses away from any localized geometric focal volume or point of the emitted shock waves wherein the emitted shock waves or pressure pulses either have no geometric

focal volume or point or have a focal volume or point ahead of the genital tissue or reproductive organ or beyond the genital tissue or reproductive organ thereby passing the emitted waves through the genital tissue or reproductive organ while avoiding having any localized focal point within the genital tissue or reproductive organ wherein the emitted pressure pulses or shock waves are convergent, divergent, planar or near planar and the pressure pulse shock wave generator or source is based on electro-hydraulic, electromagnetic, piezoceramic or ballistic wave generation having an energy density value ranging as low as 0.00001 mJ/mm2 to a high end of below 1.0 mJ/mm2.

71. Specifically, Claim 3 of the '127 Patent depends on Claim 1 and discloses "administering one or more medicaments prior, during or after subjecting the patient to acoustic shock waves." *See* Ex. A at Claims 1 and 3.

72. On its website, Launch Medical answers the question of "[d]oes it hurt?" with the following explanation:

> **Does it hurt?**
>
> People have varying levels of pain tolerance and many can perform the treatment with little discomfort. For those who are more sensitive we provide and recommend the use of a topical numbing cream, and a sample is even included with the purchase of your Phoenix. The majority of Phoenix users experience no pain at all.

https://getmyphoenix.com/faq/.

73. Launch Medical provides a numbing cream with its Phoenix device and customers are instructed to use the included lubricant and numbing cream prior to the treatment:

> **Does the kit include everything I need to get started?**
>
> The Phoenix includes everything you need to get started, including a packet of our water-based lubricant (Pheather Glide) and a packet of our 4% Lidocaine Numbing Cream for maximum comfort.

https://getmyphoenix.com/phoenix/.

74. Launch Medical provides the lubricant cream and topical numbing cream, as depicted below:




75. The Novus Center also provides numbing cream for "maximum comfort:"

**Will it hurt?**
It's totally pain free, but a little noisy. Some guys use an optional numbing cream for maximum comfort as the metal tip glides across their skin. We include a sample in your kit!

*See* https://www.orderthephoenix.com/phoenix61743394.

76. Specifically, Claim 7 of the '127 Patent depends on Claim 1 and discloses that

> …the treated genital tissue or reproductive organ has an indication of one or more pathological conditions including:
>
> infertility of oocyte or sperm, impotency, premenstrual syndrome, PMDD, stress urinary incontinence, polycystic ovarian disease, endometriosis, endometrial cancer, infertility, hormone imbalance, and tissue subjected to a variety of perturbations including hormone replacement therapy or chemical contraception.

Ex. A at Claims 1 and 7.

77. Launch Medical explains that the Phoenix treats a number of medical conditions, including "erectile dysfunction (ED), Peyronie's Disease, poor blood flow and weak erections." *See* https://getmyphoenix.com/how-it-works/. Launch Medical also explains that the Phoenix device will treat Peyronie's Disease as follows:

> **My penis is curved, will it still work?**
>
> Curvature of the penis, also known as "Peyronie's Disease" is a serious condition. At present there are 2 treatment options. "Collagenase clostridium histolyticum" is a pharmaceutical injection which may provide some relief from Peyronie's but has serious side effects, such as possible "shrinkage" of size. The other treatment option is acoustic wave therapy. Click this link for more information about treating Peyronie's with acoustic wave therapy.

https://getmyphoenix.com/faq/.

78. Each Defendant has intentionally induced and continues to induce infringement of the '127 Patent Claims in this district and elsewhere in the United States, by its intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise caused others to use the Accused Product in an infringing manner.

79. Upon information and belief, each Defendant has had knowledge of Plaintiff and its '127 Patent prior to the filing of this Complaint in this action. This information and belief is based, in part, on the fact that Launch Medical has acknowledged others invented the methods and devices comprising the Accused Product. Upon information and belief, despite knowledge of the '127 Patent, Defendant has continued to encourage, instruct, enable, and otherwise cause its customers to use its systems and methods, in a manner which infringes the '127 Patent claims.[2] Such information and believe is based, in part, on instructions provided with the Accused Product and on Launch Medical's website.

---

[2] See *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1345 (Fed. Cir. 2012); see also *Soteria Encryption, LLC v. Lenovo United States, Inc.*, Case No. CV 16-7958-GW(JPRx), 2017 WL 3449058, *2 (C.D. Cal. Feb. 27, 2017) ("courts have held that post-suit knowledge is sufficient to sustain a finding that defendant had the requisite knowledge to support claims for induced infringement.); *Labyrinth Optical Technologies, LLC v. Fujitsu America, Inc.*, Case No. SACV 13-0030 AG (MLGx), 2013 WL 12126111 (C.D. Cal. Aug. 201, 2013) ("The Federal Circuit therefore held that knowledge of the asserted patent from a complaint in the same case is sufficient to meet the knowledge requirement of indirect infringement.").

80. The provision of and sale of the Phoenix provides each Defendant with a source of revenue and business focus. Each Defendant has specifically instructed and intended its customers to use the Accused Product in such a way that infringes the '127 Patent.

81. Upon information and belief, each Defendant knew that its actions, including but not limited to, making the Accused Product available for sale, would induce, have induced, and will continue to induce infringement by its customers by continuing to sell, support, and instruct its customers on using, the Accused Product.

82. Each Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

83. Plaintiff are entitled to recover from each Defendant the damages sustained by Plaintiff as a result of each Defendants' wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

84. Plaintiff is entitled to recover from Launch Medical enhanced damages sustained by Plaintiff as a result of Launch Medical's willful infringement due to Launch Medical's knowledge of Plaintiff's claims of infringement since at least the filing of the Original Litigation, which is prior to the filing of this matter, as allowed under 35 U.S.C. § 284.

85. Upon information and belief, Plaintiff is entitled to recover from The Novus Center enhanced damages sustained by Plaintiff as a result of The Novus Center's willful infringement due to The Novus Center's knowledge of Plaintiff's business and patent portfolio. Specifically, in a case filed by The Novus Center in the Central District of California entitled *Novus Anti-Aging Center, Inc. v. Sexual MD Solutions, Inc.*, Case No. 2:20-cv-03152, The Novus Center discusses SoftWave TRT and its business, along with identification of certain patents, including the '127 Patent.

86. Each Defendant's infringement of Plaintiff's rights under the '127 Patent will continue to damage Plaintiff, causing irreparable harm to Plaintiff for which there

is no adequate remedy at law, unless enjoined by this Court.

## **COUNT II**

**Patent Infringement (U.S. Patent No. 8,535,249) Against Defendant The Novus Center, and in the Alternative, Patent Infringement (U.S. Patent No. 8,535,249) Against Defendant Launch Medical**

87. Plaintiff re-alleges and incorporates by express reference the preceding Paragraphs as if fully restated and set forth herein.

88. Although SoftWave TRT and Launch Medical had reached agreement on material terms to settle the Original Litigation, Launch Medical has not performed its obligations per that agreement, and therefore, Plaintiff is seeking to enforce the terms of the agreement as asserted in Count I, or in the alternative, to re-assert its claims of patent infringement as alleged in Counts II, III and IV herein.

89. United States Patent No. 8,535,249 (hereinafter, the "'249 Patent") was duly and legally issued by the USPTO on September 17, 2013 to its inventors, Walter Uebelacker, Reiner Schultheiss, Wolfgang Schaden, and John Warlick, and was initially assigned to General Patent, LLC. A true and accurate copy of the '249 Patent is attached hereto as **Exhibit B** and is incorporated herein by express reference.

90. As of September 30, 2020, in an Assignment of Patent Rights, SoftWave TRT is the owner of all rights, title and interest in the '249 Patent, among other patents.

91. The '249 Patent recites claims directed to an apparatus for generating pressure pulse/shock waves to produce a tissue reaction in a subject to which the wave is administered and wherein the waves have a power density in the range of approximately 0.01 $mJ/mm^2$ up to 1.0 $mJ/mm^2$ to stimulate living tissue and avoiding tissue damage.

92. Each Defendant has infringed and continues to infringe the '249 Patent, either literally or under the doctrine of equivalents, through the promotion, advertising, commercial development, branding, and sales of the Accused Product. Upon information and belief, each Defendant has infringed and continues to infringe one or

more claims of the ’249 Patent, including at least Claims 1 and 20 (the “’249 Patent Claims”) because it promotes, distributes, makes, uses, imports, offers for sale, sells, and/or advertises the Accused Product. Specifically, each Defendant has infringed the ’249 Patent by making, using, promoting, selling, offering for sale, and/or importing into the United States devices claimed and disclosed in the ’249 Claims.

93. Each defendant has intentionally induced and continues to induce infringement of the ’249 Patent Claims in this district and elsewhere in the United States, by their intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise caused others to use the Accused Product in an infringing manner.

94. Despite knowledge of the ’249 Patent as early as the date of service of the Original Litigation, Launch Medical continues to encourage, instruct, enable, and otherwise cause their customers to use devices claimed in the ’249 Patent claims.[3]

95. Despite knowledge of the ’249 Patent as early as the date of service of this Amended Complaint, if not before, The Novus Center continues to encourage, instruct, enable, and otherwise cause their customers to use devices claimed in the ’249 Patent claims.

96. The provision of and sale of the Accused Product provides each Defendant with a source of revenue and business focus. Each Defendant has specifically intended its customers to use the Accused Product in such a way that infringes the ’249 Patent. Each Defendant knew that its actions, including but not limited to, making the Accused Product available for sale, would induce, has induced, and will continue to induce infringement by their vendors and customers by continuing to sell, support, and instruct

---

[3] See *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1345 (Fed. Cir. 2012); see also *Soteria Encryption, LLC v. Lenovo United States, Inc.*, Case No. CV 16-7958-GW(JPRx), 2017 WL 3449058, *2 (C.D. Cal. Feb. 27, 2017) (“courts have held that post-suit knowledge is sufficient to sustain a finding that defendant had the requisite knowledge to support claims for induced infringement.); *Labyrinth Optical Technologies, LLC v. Fujitsu America, Inc.*, Case No. SACV 13-0030 AG (MLGx), 2013 WL 12126111 (C.D. Cal. Aug. 201, 2013) (“The Federal Circuit therefore held that knowledge of the asserted patent from a complaint in the same case is sufficient to meet the knowledge requirement of indirect infringement.”).

said customers on using the Accused Product.

97. Specifically, the preamble of Claim 1 of the '249 Patent discloses an "[a]pparatus for generating pressure pulse/shock waves comprising." Ex. B at Claim 1.

98. The Phoenix is an apparatus for generating an extracorporeal shock wave and is advertised as an Acoustic Wave Therapy device that "uses sound waves to target the treatment area." *See* https://getmyphoenix.com/how-it-works/; *see also* https//thenovuscenter.com.

99. Launch Medical further cites resources on the benefits of acoustic wave therapy (AWT) and low-intensity extracorporeal shockwave therapy (ESWT). *See* https://getmyphoenix.com/clinical-studies/; *see also* https//thenovuscenter.com.

100. Launch Medical provides information from clinical studies showing the use of shockwaves to treat conditions, including erectile dysfunction (ED):

"In this article, we explain the physics of shockwaves by establishing a foundation regarding the basics of waves, specifically soundwaves." The Basics of Waves, Soundwaves, and Shockwaves for Erectile Dysfunction, Jonathan Elliott Katz MD, Raul Ivan Clavijo MD, Paul Rizk MD, Ranjith Ramasamy MD at https://doi.org/10.1016/j.sxmr.2019.09.004).

101. Claim 1(a) of the '249 Patent discloses "a pressure pulse/shock wave (PP/SW) source." Ex. B at Claim 1.

102. The Phoenix includes an applicator in the housing, which is the PP/SW source as indicated:



103. Claim 1(b) of the '249 Patent discloses "a housing enclosing said PP/SW source." Ex. B. at Claim 1.

104. The Phoenix includes a housing, as indicated below, which encloses the applicator that is a PP/SW source.



105. Claim 1(c) of the '249 Patent discloses

> an exit window from which shock wave fronts of waves generated by said PP/SW source emanate, wherein said shock wave fronts have plane, nearly plane, convergent off target or divergent characteristics wherein the apparatus is shaped and dimensioned to provide the shock wave fronts having a power density level to produce a tissue reaction in a subject to which the wave is administered and wherein the waves have a power density in the range of approximately 0.01 mJ/mm$^2$ up to 1.0 mJ/mm$^2$ to stimulate a living tissue while avoiding tissue damage.

Ex. B at Claim 1.

106. The Phoenix includes an "exit window" in the applicator from which shock waves emanate. *See* https://getmyphoenix.com/how-it-works/ ("Use The Phoenix. Apply gentle, but firm pressure along the shaft. The micropulses immediately get to work clearing blockages and stimulating angiogenesis."); *see also* https://getmyphoenix.com/faq/ ("We recommend the use of Heat Shield on the tip of

**How often do I reapply Heat Shield on the tip of the Phoenix during use?**

We recommend the use of Heat Shield on the tip of the Phoenix on an as needed basis. This means apply it prior to the first pass and re-apply when you notice the trip dragging.

the Phoenix on an as needed basis. This means apply it prior to the first pass and re-apply when you notice the tip [sic] dragging.”).

107. On information and belief, belief, the shock wave fronts include plane, nearly plane, convergent off target or divergent characteristics.

108. The apparatus is the Phoenix, which is, upon information and belief, shaped and dimensioned to provide the shock wave fronts having a power density level to produce a tissue reaction in a subject (patient) to which the wave is administered and whether in the waves have a power density in the range of 0.01 $mJ/mm^2$ up to 1.0 $mJ/mm^2$ to stimulate a living tissue while avoiding tissue damage.

109. Plaintiff is entitled to recover from each Defendant the damages sustained by Plaintiff as a result of each Defendant’s wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

110. Plaintiff is entitled to recover from Launch Medical enhanced damages sustained by Plaintiff as a result of Launch Medical’s willful infringement due to Launch Medical’s knowledge of Plaintiff’s claims of infringement since at least the filing of the Original Litigation, which is prior to the filing of this matter, as allowed under 35 U.S.C. § 284.

111. Upon information and belief, Plaintiff is entitled to recover from The Novus Center enhanced damages sustained by Plaintiff as a result of The Novus Center’s willful infringement due to The Novus Center’s knowledge of Plaintiff’s business and patent portfolio. Specifically, in a case filed by The Novus Center in the Central District of California entitled *Novus Anti-Aging Center, Inc. v. Sexual MD Solutions, Inc.*, Case No. 2:20-cv-03152, The Novus Center discusses SoftWave TRT and its business, along with identification of certain patents.

## COUNT III

## Patent Infringement (U.S. Patent No. 7,841,995) Against Defendant The Novus Center, and In the Alternative, Patent Infringement (U.S. Patent No. 7,841,995) Against Launch Medical

112. Plaintiff re-alleges and incorporates by express reference the preceding Paragraphs as if fully restated and set forth herein.

113. Although the SoftWave TRT and Launch Medical had reached agreement on material terms to settle the Original Litigation, Launch Medical has not performed its obligations per that agreement, and therefore, Plaintiff is seeking to enforce the terms of the agreement as asserted in Count I, or in the alternative, to re-assert its claims of patent infringement as alleged in Counts II, III and IV herein.

114. United States Patent No. 7,841,995 (hereinafter, the "'995 Patent") was duly and legally issued by the USPTO on November 30, 2010 to its inventors, Reiner Schultheiss, Wolfgang Schaden, and John Warlick, and was initially assigned to General Patent, LLC. Attached hereto as **Exhibit C** is a true and correct copy of the '995 Patent and is incorporated herein by express reference.

115. As of September 30, 2020, in an Assignment of Patent Rights, SoftWave TRT is the owner of all rights, title and interest in the '995 Patent, among other patents.

116. The '995 Patent recites claims relating to the field of treating mammals with acoustic pressure pulse shock waves, generally, and more specifically, to treating various conditions found in humans and animals using shockwaves that are generated as either focused waves at high or low energy levels or non-focused waves at preferably low energy levels or a combination of such waves.

117. The claims of the '995 Patent are directed to a method of stimulating a substance that is tissue having cells, which can be an organ of a mammal, including a human. Such organ may include the skin or any other organ. The tissue may be, *inter alia*, muscle or tendon and may be part of the vascular system, a part of the nervous

system, a part of the urinary systems, a part of the nervous system, a part of the lymph node or pituitary systems.

118. Each Defendant promotes, markets, and teaches customers to independently treat themselves using the Phoenix to treat erectile dysfunction and Peyronie's Disease, among other things.

119. Each Defendant has infringed and continues to infringe the '995 Patent, either literally or under the doctrine of equivalents, by promoting, marketing, training, and licensing the use of infringing methods. Specifically, each Defendant has infringed and continues to infringe one or more claims of the '995 Patent, including at least Claims 1 and 3 (the "'995 Patent Claims") by promoting, marketing, and advertising the Phoenix to potential customers. As such, each Defendant has infringed the '995 Patent by utilizing the methods claimed and disclosed in the '995 Claims.

120. Each Defendant has intentionally induced and continues to induce infringement of the '995 Patent Claims in this district and elsewhere in the United States, by their intentional acts which have successfully, among other things, encouraged, instructed, enabled, and otherwise caused others to use the Phoenix in an infringing manner. Despite knowledge of the '995 Patent at least as early as the date of service of this Complaint, Launch Medical continues to encourage, instruct, enable, and otherwise cause their customers to use their Phoenix device, in a manner which infringes the '995 Patent claims.[4]

121. The preamble of Claim 1 of the '995 Patent discloses "[t]he method of stimulating a cellular substance wherein the cellular substance is a tissue having cells

---

[4] <u>See</u> *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1345 (Fed. Cir. 2012); <u>see also</u> *Soteria Encryption, LLC v. Lenovo United States, Inc.*, Case No. CV 16-7958-GW(JPRx), 2017 WL 3449058, *2 (C.D. Cal. Feb. 27, 2017) ("courts have held that post-suit knowledge is sufficient to sustain a finding that defendant had the requisite knowledge to support claims for induced infringement.); *Labyrinth Optical Technologies, LLC v. Fujitsu America, Inc.*, Case No. SACV 13-0030 AG (MLGx), 2013 WL 12126111 (C.D. Cal. Aug. 201, 2013) ("The Federal Circuit therefore held that knowledge of the asserted patent from a complaint in the same case is sufficient to meet the knowledge requirement of indirect infringement.").

and the tissue is either part of an organ or the entire organ of a human or animal comprises the steps of." Ex. C at Claim 1.

122. Claim 1(a) of the '995 Patent discloses a step of "treating the cellular substance." Ex. C at Claim 1.

123. Claim 1(b) of the '995 Patent discloses

> activating an acoustic shock wave generator or source to emit pressure pulses or acoustic shock waves directed toward the substance to impinge the substance with pressure pulses or shock waves having a low energy density in the range of 0.00001 mJ/mm2 up to 1.0 mJ/mm2; the pressure pulse being an acoustic pulse which includes several cycles of positive and negative pressure,
>
> wherein the pressure pulse has an amplitude of the positive part of such a cycle should be above 0.1MPa and the time duration of the pressure pulse is from below a microsecond to about a second, rise times of the positive part of the first pressure cycle in the range of nanoseconds (ns) up to some milli-seconds (ms), the acoustic shock waves being very fast pressure pushes having amplitudes above 0.1 MPa and rise times of the amplitude being below 100's of ns, the duration of the shock wave is typically below 1-3 micro-seconds (μs) for the positive part of a cycle typically above some micro-seconds for the negative part of the cycle;

Ex. C at Claim 1.

124. Claim 1(c) of the '995 Patent discloses

> subjecting the cellular substance to convergent, divergent, planar or near planar acoustic shock waves or pressure pulses in the absence of a focal point imping the substance stimulating a cellular response in the absence of creating cavitation bubbles evidenced by not experiencing the sensation of cellular hemorrhaging caused by the emitted waves or pulses in the substance wherein the cellular substance is positioned within a path of the emitted shock waves or pressure pulses and away from any localized geometric focal volume or point of the emitted shock

> waves wherein the emitted shock waves or pressure pulses either have no geometric focal volume or point or have a focal volume or point ahead of the cellular substance or beyond the cellular substance thereby passing the emitted waves through the cellular substance while avoiding having any localized focal point within the cellular substance wherein the emitted pressure pulses or shock waves are convergent, divergent, planar or near planar and the pressure pulse shock wave generator or source is based on electro-hydraulic, electromagnetic, piezoceramic or ballistic wave generation having an energy density value ranging as low as 0.00001 mJ/mm2 up to 1.0 mJ/mm2.

125. Claim 3 of the '995 Patent discloses "[t]he method of stimulating a substance of claim 1 wherein the organ is either a heart, a brain, skin, a live[r] or a kidney."

126. The Phoenix is used to stimulate the skin.

127. Each Defendants' aforesaid activities have been without authority and/or license from Plaintiff.

128. Plaintiff is entitled to recover from each Defendant for the damages sustained by Plaintiff as a result of each Defendant's wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

129. Plaintiff is entitled to recover from Launch Medical enhanced damages sustained by Plaintiff as a result of Launch Medical's willful infringement due to Launch Medical's knowledge of Plaintiff's claims of infringement since at least the filing of the Original Litigation, which is prior to the filing of this matter, as allowed under 35 U.S.C. § 284.

130. Upon information and belief, Plaintiff is entitled to recover from The Novus Center enhanced damages sustained by Plaintiff as a result of The Novus Center's willful infringement due to The Novus Center's knowledge of Plaintiff's business and patent portfolio. Specifically, in a case filed by The Novus Center in the

Central District of California entitled *Novus Anti-Aging Center, Inc. v. Sexual MD Solutions, Inc.*, Case No. 2:20-cv-03152, The Novus Center discusses SoftWave TRT and its business, along with identification of certain patents.

131. Each Defendant's infringement of Plaintiff's rights under the '995 Patent will continue to damage Plaintiff, causing irreparable harm to Plaintiff for which there is no adequate remedy at law, unless enjoined by this Court.

## JURY DEMAND

132. Plaintiff demands a trial by jury on all issues.

WHEREFORE Plaintiff SoftWave TRT prays upon this Court for the following relief:

A. That summons issue and each Defendant be served according to law;

B. That Plaintiff recovers from each Defendant all past and future damages caused by its breach of contract, or in the alternative, patent infringement;

C. An adjudication that Launch Medical has breached the settlement agreement, or in the alternative, that one or more claims of the Patents-in-Suit has been infringed, either literally and/or under the doctrine of equivalents, by Launch Medical;

D. An adjudication that one or more claims of the Patents-in-Suit has been infringed, either literally and/or under the doctrine of equivalents, by The Novus Center;

E. An adjudication that each Defendant has induced infringement of one or more claims of the Patents-in-Suit;

F. An adjudication that each Defendants' acts of infringement have been willful.

G. An award of damages to be paid by Launch Medical adequate to compensate Plaintiff for Launch Medical's breach of contract, or in the

alternative, Launch Medical's past infringement and any continuing or future infringement up until the date such judgment is entered, including interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Plaintiff for Launch Medical's infringement, an accounting of all infringing sales including, but not limited to, those sales not presented at trial;

H. An award of damages to be paid by The Novus Center adqueate to compensate Plaintiff for The Novus Center's past infringement and any continuing or future infringement up until the date such judgment is entered, including interest, costs, and disbursements as justified under 35 U.S.C. § 284 and, if necessary to adequately compensate Plaintiff for The Novus Center's infringement, an accounting of all infringing sales including, but not limited to, those sales not presented at trial;

I. A grant of permanent injunction pursuant to 35 U.S.C. § 283, enjoining each Defendant and its respective officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from further acts of infringement with respect to any one or more of the claims of the Patents-in-Suit;

J. That this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and,

K. Any further relief that this Court deems just and proper.

This 2nd day of November, 2025.

**INSIGHT, PLC**
By: /s/ Steven W. Ritcheson
Steven W. Ritcheson

*Attorney for Plaintiff*